UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
CIT BANK, N.A.,

                                Plaintiff,

    -against-

JEFFREY COOMBES, DIANE A. COOMBES
*also known as* DIANE COOMBES *also known
as* DIANE A. ROCKWOOD, and VELOCITY
INVESTMENTS, LLC

                                Defendants.
----------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**

17-CV-5871 (ADS) (SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

      Presently before the Court in this diversity mortgage foreclosure action, on

referral from the Honorable Arthur D. Spatt for Report and Recommendation, is

Plaintiff CIT Bank, N.A.'s ("Plaintiff" or "CIT") motion for default judgment and

judgment of foreclosure and sale against Defendants Jeffrey Coombes and Diane A.

Coombes *also known as* Diane Coombes *also known as* Diane A. Rockwood (together,

the "Coombeses"), along with Velocity Investments, LLC ("Velocity," and collectively

with the Coombeses, "Defendants").  *See* Docket Entry ("DE") [19].  By way of

Complaint filed on October 6, 2017, Plaintiff commenced this action against

Defendants seeking, *inter alia*, to foreclose on a mortgage encumbering the property

located at 11 Everett Street, Valley Stream, New York 11580 (the "Subject Property").

*See* Complaint ("Compl."), DE [1].  After Defendants failed to respond to the

Complaint, the Clerk of the Court entered a Certificate of Default pursuant to Fed.

R. Civ. P. 55(a) as to all Defendants on January 10, 2018.  DE [16].  On December 11,

2018, Plaintiff filed the instant motion, which Judge Spatt then referred to this Court for Report and Recommendation. *See* DEs [19], [21]. For the reasons set forth below, the Court respectfully recommends that CIT's motion be granted in part and denied in part as detailed herein.

## I.    Background

On or about April 11, 2007, the Coombeses executed and delivered a promissory note to IndyMac Bank, F.S.B. ("IndyMac") and its successors and/or assigns, in connection with their purchase of the Subject Property, by which they agreed to pay a principal amount of $340,000 plus interest at a rate of 6.875% *per annum*. *See* Compl. ¶ 13; *see also* Affidavit of Tenisa Brooks ("Brooks")[1] in Support of Default Judgment ("Brooks Aff."), DE [19-2], ¶ 3; *id.* Ex. 1, DE [19-3] (the "Note").[2] The Coombeses concurrently executed and delivered a mortgage on the Subject Property to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for IndyMac, to secure payment on the Note. *See* Compl. ¶ 14; *see also* Brooks Aff. ¶ 4, Ex. 2, DE [19-4] (the "Mortgage"). The Mortgage was recorded with the Nassau County Clerk on May 14, 2007 in LIBER: M 31886, Page 874. Compl. ¶ 14. On April 13, 2011, MERS assigned the Mortgage to OneWest Bank, FSB as successor in interest to IndyMac, and this transfer was duly filed with the Nassau County Clerk. *See id.* ¶ 15. Subsequently, Plaintiff took possession of the Note and Mortgage

---

[1] Ms. Brooks is the Assistant Secretary of LoanCare LLC, the authorized sub-servicer and attorney-in-fact for Plaintiff. *See* Brooks Aff. ¶ 1; Ex. 12.

[2] The Court has subject matter jurisdiction over this matter because there is complete diversity among the parties. *See* 28 U.S.C. § 1332; *see also* Compl. ¶¶ 8-9 (alleging that the Coombeses are citizens of New York, Velocity is a citizen of New Jersey, and CIT is a citizen of California).

through a transfer via a blank endorsement Allonge, and remains the owner thereof. *See* Brooks Aff. ¶¶ 1, 4-5; Compl. ¶¶ 15, 17, 18; Note at 7.  On or about October 12, 2016, the Mortgage terms were modified as a result of the Coombeses' then-default due to financial hardship.  *See* Compl. ¶ 16; Brooks Aff. ¶ 8, Ex. 4, DE [19-6] (the "Modification") at § 1(A).  Under the Modification, executed by the Coombeses and CIT, the principal balance due under the Note and Mortgage became $506,695.45, with interest set to accrue at an annual rate of 3.125% from September 1, 2016 through the Note's maturity on September 1, 2056.  *See id.* at 1; § 3.  The Modification was duly recorded with the Nassau County Clerk.  *See id.*

The Coombeses defaulted on the Mortgage and Note by failing to remit the monthly payment due on January 1, 2017, and all payments due thereafter.[3]  *See* Compl. ¶ 24.  On March 8, 2017, in connection with the missed payments, Plaintiff sent the Coombeses a 30-day default notice, as required by the Mortgage, via Certified and First-Class Mail.  *See id.* ¶ 25; Mortgage §§ 15, 22; *see also* Brooks Aff. ¶ 9, Ex. 5, DE [19-7] (the "Default Notice").  The Default Notice advised the Coombeses of the risk of the Mortgage being accelerated should the arrears remain uncured.  *See* Default Notice.  That same day, CIT also sent the Coombeses a 90-day pre-foreclosure notice as required by N.Y. Real Prop. Acts. Law § 1304.  *See* Compl. ¶ 26; *see also* Brooks Aff. ¶ 10, Ex. 6, DE [19-8] (the "90-Day Notice").  On March 9, 2017, Plaintiff sent a Proof of Filing Statement to the New York State Department of Financial Services, as required by N.Y. Real Prop. Acts. Law § 1306.  *See* Compl. ¶ 27; *see also*

---

[3] Thus, the Coombeses made their last payment on December 1, 2016.

3

Brooks Aff. ¶ 11, Ex. 7, DE [19-9]. The Coombeses never responded to the Default Notice and remain in default under the Mortgage. *See* Compl. ¶ 29. Accordingly, Plaintiff has elected to declare the entire amount owed under the Note and Mortgage immediately due and payable. *See id*. ¶ 30

Based on the foregoing, CIT commenced this action against Defendants on October 6, 2017. *See* DE [1]. On October 12, 2017, the Clerk of the Court issued a Summons for each Defendant. *See* DEs [9] – [11]. Plaintiff filed a Notice of Pendency with the Nassau County Clerk, pursuant to N.Y. C.P.L.R. §§ 6501-16 and N.Y. Real Prop. Acts. Law § 1331, on October 31, 2017. *See* Affirmation of Adam P. Briskin, Esq. ("Briskin Aff."), DE [19-1], Ex. C. Defendants were each served with a copy of the pleadings, between October 25, 2017 and November 20, 2018. *See* DEs [12] – [14]. After Defendants failed to timely answer or otherwise respond to the Complaint, on January 10, 2018, the Clerk of the Court noted their default at Plaintiff's request. *See* DEs [15], [16].

On December 11, 2018, CIT filed the instant motion requesting, among other things: (i) a default judgment against Defendants; (ii) foreclosure and sale of the Subject Property, in one parcel, through a Court-appointed referee; and (iii) damages consisting of the unpaid principal balance, pre- and post-judgment interest and other amounts due under the Mortgage and Note, and attorneys' fees and costs arising from the instant action. *See* Briskin Aff. ¶ 2; *see also* Ex. H, Default Judgment [of Foreclosure and Sale], DE [19-21] ("Proposed Judgment"). Shortly thereafter, Judge Spatt referred the motion to this Court for Report and Recommendation. *See* DE [21].

4

CIT further alleges that Velocity is joined as a necessary party by virtue of it potentially having a subordinate lien on the Subject Property. *See* Compl. ¶ 6; *see also* N.Y. Real Prop. Acts. Law § 1311 (requiring that the plaintiff in a mortgage foreclosure action join a subordinate lienholder as a party). Thus, Plaintiff also seeks to have Velocity's interest in the property extinguished. *See* Proposed Judgment at 6-7.

## II.    Default Judgment Standard

Motions for default judgment are governed by Rule 55 of the Federal Rules of Civil Procedure, which provides for a two-step process. *See* Fed. R. Civ. P. 55; *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504-05 (2d Cir. 2011). Initially, the moving party must obtain a certificate of default from the Clerk of the Court. *See* Fed. R. Civ. P. 55(a). Once the certificate of default is issued, the moving party may apply for entry of a default judgment. *See* Fed. R. Civ. P. 55(b).

When a default occurs, the well-pleaded factual allegations set forth in a complaint relating to liability are deemed true. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied"). However, "[it] is well established that a party is not entitled to default judgment as a matter of right; rather the entry of a default judgment is entrusted to the sound discretion of the court." *Allstate Ins. Co. v. Howell*, No. 09-cv-4660, 2013 WL 5447152, at *1 (E.D.N.Y. Sept. 30, 2013) (internal quotation and citation omitted).

A plaintiff seeking a default judgment must demonstrate that its "uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012). In determining whether to grant a motion for default judgment, the court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." *Ferrara v. Tire Shop Ctr.*, No. 14-cv-4657, 2015 WL 3562624, at *2 (E.D.N.Y. Apr. 6, 2015) (internal quotations and citation omitted). Accordingly, "prior to entering default judgment, a district court is required to determine whether the [plaintiff's] allegations establish the [defendant's] liability as a matter of law." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (internal quotation and citation omitted).

## III.   Discussion

### A.   <u>Liability</u>

#### i.   <u>The Coombeses' Liability</u>

Under New York law, a plaintiff seeking to foreclose upon a mortgage must demonstrate "the existence of the mortgage, ownership of the mortgage, and the defendant's default in payment on the loan [secured by the mortgage]." *OneWest Bank, N.A. v. Hawkins*, No. 14-cv-4656, 2015 WL 5706945, at *5 (E.D.N.Y. Sept. 2, 2015) (citing *Campaign v. Barba*, 23 A.D.3d 327, 805 N.Y.S.2d 86 (2d Dep't 2005)). Thus, once the plaintiff submits the mortgage, the unpaid note, and evidence of the default, it has established a *prima facie* entitlement to judgment, and the burden shifts to the defendant to rebut the plaintiff's evidence. *See U.S. v. Watts*, No. 13-cv-

3211, 2014 WL 4275628, at *3 (E.D.N.Y. May 28, 2014) ("once a plaintiff mortgagee in a foreclosure action has established a *prima facie* case by presenting a note, a mortgage, and proof of default, it has a presumptive right to foreclose that can only be overcome by an affirmative showing by the mortgagor").

Here, CIT – through its Complaint and supporting documents – has established a *prima facie* entitlement to a default judgment against the Coombeses. Initially, Plaintiff has demonstrated the existence of the Mortgage originally executed by the Coombeses and MERS, as nominee for the lender, IndyMac. *See* Mortgage at 16; *see also* Brooks Aff. ¶ 4. Further, CIT has proven ownership of the Mortgage by submitting evidence that the chain of title for the Note – the repayment of which was secured by the Mortgage – was transferred, through assignment from IndyBank (via MERS) to OneWest Bank, and then to Plaintiff through the blank endorsement Allonge. *See* Note at 7; Compl. ¶¶ 15, 17, 18; Brooks Aff. ¶¶ 4-5. In addition, the Modification is executed by CIT and the Coombeses, further establishing Plaintiff's ownership. *See* Modification at 9.

The Note provides that the Coombeses shall make monthly payments on the first of every month, and that they will be in default if they fail to make each monthly payment when it is due. *See* Note § 6(B). The Note further states that if the default remains uncured for more than 30-days after written notice thereof is provided, the holder may require immediate repayment of the outstanding principal and interest. *See id.* § 6(C). The Coombeses failed to make their monthly payment due on January 1, 2017 and have missed every payment since, and thus are in default under the Note.

*See* Compl. ¶ 24; Brooks Aff. ¶ 9.  In addition, the Coombeses did not cure their default despite being sent the Default Notice on March 8, 2017.  *See* Compl. ¶ 25; Brooks Aff. ¶ 9; Default Notice.  CIT has therefore demonstrated its right to accelerate the entire outstanding balance on the Note.   Because the Coombeses neither answered Plaintiff's Complaint nor opposed the instant motion, they have failed to rebut CIT's *prima facia* showing that it is entitled to a default judgment.  Accordingly, the Court respectfully recommends that Plaintiff's motion for a default judgment against the Coombeses be granted.

ii.    <u>Velocity's Liability</u>

As set forth above, Velocity is also in default in this action by virtue of its failure to respond to the Complaint, *see* DE [16], and has thus conceded all well-plead allegations of liability against it.   *See Greyhound Exhibitgroup*, 973 F.2d at158.  Moreover, the record demonstrates that Velocity was served with the Summons and Complaint and the instant motion for default judgment.  *See* DEs [14], [20].  In the context of foreclosure actions, "[c]ourts regularly enter default judgment . . . against defendants with nominal interests in the relevant property, such as parties holding liens that are subordinate to the plaintiff's interest."  *CIT Bank, N.A. v. O'Sullivan*, No. 14-cv-5966, 2016 WL 2732185, at *9 (E.D.N.Y. May 10, 2016) (internal quotation and citation omitted).  "When a default judgment is entered against a defendant with a nominal interest in a property, that defendant's interest in the relevant property is terminated."  *Id.* (internal quotation and citation omitted).

Here, although scant, the Complaint alleges upon information and belief that Velocity "has an interest in the [Subject] Property as a subordinate lienor."  Compl. ¶ 6.  Because Velocity has failed to respond to any of the pleadings in this case, it concedes that its interest in the Subject Property, if any, is subordinate to the Mortgage.  Accordingly, the Court respectfully recommends that a default judgment against Velocity be entered, extinguishing any rights it may have concerning the Subject Property.

### B.    Damages and Remedies Against the Coombeses

Once liability is established, the court must ascertain damages with "reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).  To prove damages, the movant need only show that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound Exhibitgroup*, 973 F.2d at 159.  An evidentiary hearing is not required so long as there is a basis, demonstrated through detailed affidavits and other documentary evidence, for the damages awarded.  *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991).

Here, CIT requests $561,130.67 in damages, comprised of: (i) $505,577.31 in unpaid principal; (ii) $20,680.30 in accrued interest; (iii) $2,354 in recoverable costs under the Note; (iv) $20,705.82 in advances made by CIT to cover escrow shortages; (iv) $362.74 in late charges; (v) $1,861 in Recording and Nassau County Tax Map Verification Fees; (vi) $20 in non-sufficient funds charges; (vii) $7,924.50 in attorneys'

9

fees; and (viii) $1,645 in litigation disbursements.  *See* Brooks Aff. ¶ 17; Briskin Aff. ¶ 51.

      i.    <u>Unpaid Principal Balance</u>

Plaintiff first seeks to recover the unpaid principal balance on the Note of $505,577.31.  *See* Brooks Aff. ¶ 17.  Under the terms of the Note, the Coombeses initially promised to pay CIT $340,000.  *See* Note § 1.  Due to the Modification, however, the principal balance was increased to $506,695.45.  *See* Modification at 1.  The Note required the Coombeses, in the event of a default, to pay all overdue amounts by a date set forth in a written notice of default by the date set forth therein, provided it was at least 30 days after such notice was mailed.  *See* Note § 6(C).  In the event such delinquency was not cured, Plaintiff was entitled to accelerate the remainder of the loan.  *See id*.

In support of the instant damages application, CIT submits the Brooks Affidavit.  Brooks asserts that she represents the "authorized subservicer and attorney-in-fact for [Plaintiff]" and that the performance of her ordinary job functions, including maintaining mortgage documents, gives her personal knowledge of the terms and circumstances surrounding the Note and Mortgage.  *See* Brooks Aff. ¶¶ 1-2, Ex. 12, DE [19-14] (limited power of attorney).  Brooks confirms that CIT is the current owner and holder of the Mortgage and the Note.  *See id*. ¶ 13.  The materials submitted further establish that, at the time of the default on January 1, 2017, the unpaid principal balance on the Note was $505,577.31.  *See id* ¶ 17, Ex. 8, DE [19-10] (the "Payoff Chart").  That amount became due on April 11, 2017, as indicated in the

Default Notice. *See* Note § 6(C); Default Notice. Based upon the sworn statement of Brooks, no payment has been received since the January 1, 2017 default. *See* Brooks Aff. ¶ 9. Accordingly, the Court respectfully recommends that CIT be awarded $505,577.31 against the Coombeses to recover the unpaid principal balance.

ii. <u>Interest</u>

Plaintiff also seeks $20,680.30 in interest that accrued from December 1, 2016 through October 15, 2018, as well as additional pre- and post-judgment interest. *See* Brooks Aff. ¶ 18; Payoff Chart; Briskin Aff. ¶ 2. Under the terms of the Modification (which was in effect when the default began), interest accumulated on the outstanding principal balance at an annual rate of 3.125%. *See* Modification at § 3(C). As noted above, the Coombeses made their last payment on December 1, 2016. *See* Brooks Aff. ¶ 9. Thus, interest accrued at a rate of $43.29 per day for 683 days (December 1, 2016 through October 15, 2018).[4] By the Court's calculation, CIT should therefore be entitled to $29,564 in accrued interest ($43.29 X 683). Plaintiff, however, only requests $20,680.30 in this regard. *See* Brooks Aff. ¶ 18; Payoff Chart. Because CIT seeks *less* interest than it appears entitled to, the Court respectfully recommends that $20,680.30 be awarded. The Court further recommends that CIT be granted *per diem* interest of $43.29 from October 15, 2018 until the date on which judgment is entered. *See E. Sav. Bank, FSB v. McLaughlin*, No. 13-cv-1108, 2015 WL 5657355,

---

[4] This *per diem* amount is calculated by multiplying the $505,577.31 principal by the 3.125% annual interest rate, and then dividing that number by 365 days in a year. *See Onewest Bank v. Serbones*, No. 14-cv-7281, 2016 WL 1295197, at *4 (E.D.N.Y. Mar. 7, 2016), *report and recommendation adopted as modified sub nom.*, 2016 WL 1306545 (E.D.N.Y. Mar. 31, 2016) (applying the foregoing calculation to calculate *per diem* interest).

at *5 (E.D.N.Y. Aug. 17, 2015) (recommending an award of *per diem* interest in an action for judgment of foreclosure and sale), *report and recommendation adopted*, 2015 WL 5664454 (E.D.N.Y. Sept. 24, 2015).

In addition, the Court respectfully recommends awarding post-judgment interest to be calculated based on the weekly average one-year constant maturity Treasury yield for the week preceding the date on which judgment is entered. *See* 28 U.S.C. § 1961(a) ("[I]nterest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average [one]-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding."); *see also Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008) (holding that post-judgment interest is mandatory and calculated pursuant to federal statute); *Builders Bank v. Northern Funding, LLC*, No. 08-cv-3575, 2012 WL 4928854, at *1 (E.D.N.Y. Oct. 16, 2012) (awarding post-judgment interest at the federal rate in action for judgment of foreclosure and sale).

### iii. Recoverable Costs and Other Expenditures

Pursuant to the Mortgage, the Coombeses agreed that in the event of a default, CIT had the right to pay appropriate sums to protect its interest in the Subject Property. *See* Mortgage § 9. Plaintiff claims that it expended $2,354 in costs associated with property preservation, inspection, and appraisals. *See* Brooks Aff. ¶ 19. In support of this request, CIT submits a Corporate Advance History detailing the individual expenditures. *See id*. ¶ 20, Ex. 9, DE [19-11]. Thus, the Court recommends awarding $2,354 in recoverable costs. CIT also seeks $1,861 in

Recording and Nassau County Tax Map Verification Fees and $20 in non-sufficient funds charges, and provides testimony and documentary evidence supporting this request. *See* Brooks Aff. ¶ 20, Ex. 10 [19-12].  Accordingly, the Court recommends awarding $1,881 in this regard, and a total of $4,235 in recoverable expenditures.

### iv.  Escrow Advances

Next, Plaintiff seeks to recover $20,705.82 for escrow advances made through October 15, 2018.  *See* Brooks Aff. ¶¶ 21-22.  The Mortgage provides that the Coombeses will pay "all amounts necessary to pay for taxes, assessments, water charges, sewer rents, and other similar charges…" which are collectively referred to as "Escrow Items." *See* Mortgage § 3(a).  CIT asserts that it advanced $20,705.82 for these Escrow Items between the January 1, 2017 default and October 15, 2018.  *See* Brooks Aff. ¶ 22.  To support this claim, Plaintiff submits a detailed ledger itemizing each escrow advance, as well as the Payoff Chart evincing the total amount.  *See* Brooks Aff., Ex 11, DE [19-13]; Payoff Chart.  Accordingly, the Court respectfully recommends that Plaintiff is entitled to $20,705.82 in escrow advances.

### v.  Late Charges

CIT also requests late fees in the amount of $362.74.  *See* Brooks Aff. ¶¶ 23-24.  Under the Note, any monthly payment not received within 15 days will be subject to a late fee totaling 2% of the "overdue payment of principal and interest."  *See* Note § 6(A).  Thus, under the Modification, where monthly payments were $1,295.41 each, any late fee charged was for $25.91. *See* Modification at § 3(C).  Once again, Plaintiff has submitted a ledger detailing each of the 14 late fees assessed against the

Coombeses, as well as a summary page showing the aggregate charges ($25.91 X 14 = $362.74). *See* Brooks Aff., Exs. 10, 11.   Accordingly, the Court respectfully recommends awarding CIT $362.74. in late fees. *See E. Sav. Bank, FSB v. Bright*, No. 11-CV-1721, 2013 WL 3282889, at *3 (E.D.N.Y. June 27, 2013) (awarding late charges pursuant to terms the of a note in a mortgage foreclosure action).

      vi.  <u>Attorneys' Fees and Costs</u>

Finally, Plaintiff requests reimbursement of legal fees in the amount of $7,924.50 and costs of $1,645.  *See* Memorandum of Law in Support of Motion for Default Judgment ("Pltf.'s Mem."), DE [19-22] at 4-6; *see also* Briskin Aff. ¶ 29.  In a diversity action, such as the instant matter, "state law governs the issue of counsel fee availability."  *Kaplan v. Rand*, 192 F.3d 60, 70 (2d Cir. 1999); *see also Banker v. Nighswander, Martin & Mitchell*, 37 F.3d 866, 873 (2d Cir. 1994) (noting that "[s]tate law creates the substantive right to attorney's fees").  "Since there is no statute in New York authorizing the recovery of an attorney's fee in a mortgage foreclosure action, such a fee may only be recovered if it is contractually authorized."  *Vigo v. 501 Second St. Holding Corp.*, 121 A.D.3d 778, 779, 994 N.Y.S.2d 354, 356 (2d Dep't 2014) (citing *Neighborhood Hous. Servs. of New York City, Inc. v. Hawkins*, 97 A.D.3d 554, 554, 947 N.Y.S.2d 321, 322 (2d Dep't 2012)).  Here, both the Note and the Mortgage entitle Plaintiff to recover reasonable attorneys' fees in the event that the Coombeses default and CIT files a lawsuit for foreclosure of the Subject Property.  *See* Note § 6(E); Mortgage §§ 14, 22.

Nevertheless, a contractual provision providing for attorneys' fees "may only be enforced to the extent that the amount is reasonable and warranted for the services actually rendered." *Kamco Supply Corp. v. Annex Contracting Inc.*, 261 A.D.2d 363, 365, 689 N.Y.S.2d 189, 190 (2d Dep't 1999). "In determining reasonable compensation for an attorney, the court must consider such factors as the time, effort, and skill required; the difficulty of the questions presented; counsel's experience, ability, and reputation; the fee customarily charged in the locality; and the contingency or certainty of compensation." *People's United Bank v. Patio Gardens III, LLC*, 143 A.D.3d 689, 691, 38 N.Y.S.3d 262, 264 (2d Dep't 2016) (internal quotation marks and citation omitted); *see also Soberman v. Groff Studios Corp.*, No. 99-cv-1005, 2000 WL 1010288, at *1 (S.D.N.Y. July 21, 2000) (noting that, under New York law, attorneys' fee awards are calculated using the "lodestar analysis"). "[T]he court must possess sufficient information upon which to make an informed assessment of the reasonable value of the legal services rendered." *NYCTL 1998-1 Trust v. Oneg Shabbos,* 37 A.D.3d 789, 791, 830 N.Y.S.2d 763, 764 (2d Dep't 2007).

To this end, the party seeking the award of fees must offer proof not only as to the customary fee charged for similar services, but also of the experience, reputation, and education of the lawyers who provided the representation. *See Friedman v. Miale,* 69 A.D.3d 789, 791-92, 892 N.Y.S.2d 545, 547-58 (2d Dep't 2010). In addition, a request for an award of attorneys' fees must be supported by contemporaneous time records that describe with specificity, by attorney, the nature of the work done, the hours expended, and the dates on which the work was performed. *See Cruz v. Local*

*Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159-60 (2d Cir. 1994). The party requesting attorneys' fees bears the burden to establish the reasonableness of such an award. *See Fox v. Vice*, 563 U.S. 826, 838, 131 S. Ct. 2205, 2216 (2011); *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941 (1983).

Here, the $7,924.50 in attorneys' fees consists of: (i) 13.2 hours of total work for a flat rate of $2,800 ($212.12 per hour); (ii) 3.6 hours of work by partner Andrew Jacobson ("Jacobson") at a rate of $475 per hour for a total of $1,710; (iii) 2.8 hours of work by associate Adam Briskin ("Briskin") at a rate of $365 per hour, and another 0.2 hours at $385 per hour, for a total of $1,099; (iv) 0.7 hours of work by paralegal Julius Crockwell ("Crockwell") at a rate of $165 per hour for a total of $115.50; and (v) $2,200 for anticipated services in connection with the current action. *See* Briskin Decl. ¶¶ 36, 41. When averaged out, the incurred attorneys' fee of $5,724.50 equate to $279.24 per hour for the 20.5 hours of work performed. "Courts in the Eastern District of New York award hourly rates ranging from $200 to $450 per hour for partners …." *Houston v. Cotter*, 234 F.Supp.3d 392, 402 (E.D.N.Y. 2017) (quoting *D'Annunzio v. Ayken, Inc.*, No. 11-cv-3303, 2015 WL 5308094, at *4 (E.D.N.Y. Sept. 10, 2015)); *see also Sass v. MTA Bus Co.*, 6 F.Supp.3d 238, 261 (E.D.N.Y. 2014) ("Recent opinions issued by courts within the Eastern District of New York have found reasonable hourly rates to be approximately $300-$450 for partners …." (citations omitted)). Indeed, a least one court in this District has approved a rate of $375.00 per hour for experienced attorneys specializing in foreclosure matters. *See Houston*, 234 F. Supp. 3d at 402.

16

In support of its motion, CIT has detailed the background and experience of each individual at is counsel's law firm, Bronster, LLP ("Bronster"),[5] performing legal services on its behalf. *See* Briskin Aff. ¶¶ 37-40, Ex. G, DE [19-20] ("Billing Records"). Jacobson, a partner at Bronster, received his undergraduate degree at Bucknell University, an MBA at Baruch College, and his JD from New York Law School. *See* Briskin Aff. ¶ 38. He has been practicing law for nearly 30 years, and has extensive experience representing mortgage servicers and financial institutions. *See id*. Briskin, an associate at Bronster, received his undergraduate degree from SUNY Albany and a JD from Albany Law School of Union University in 2011. *See id*. ¶ 39. He has been practicing law for approximately six years, and focuses his practice on residential and commercial mortgage foreclosure litigation, and other property-related proceedings. *See id*. Crockwell has been a paralegal since 2011, and received his undergraduate degree from Queens College in 2001. *See id*. ¶ 40.

In addition to detailing the credentials of those who provided services, Plaintiff has submitted contemporaneous billing records detailing the work performed. *See* Briskin Aff., Ex. G, DE [19-20] ("Billing Records"). The Billing Records contain individual entries for each task performed and the time spent thereon, the date of the services, the individual performing the work, and the dollar amount of each charge. *See id*. The services include, but are not limited to: (i) title searches; (ii) loan document review; (iii) drafting of pleadings; (iv) numerous filings; (v) attention to

---

[5] Plaintiff was originally represented by Windels Marx Lane & Mittendorf, LLP, but that firm's Tax Lien and Mortgage Foreclosure Group began operating under Bronster on or about September 1, 2018. *See* Briskin Aff. ¶ 33; *see also* DE [18]. For the purposes of this Report and Recommendation, the Court refers to both firms as Bronster.

service of process; and (vi) preparation of the instant motion.  *See id.*; *see also* Briskin Aff. ¶ 34.

Although the hourly rates charged by Jacobson and Briskin are on the higher end of the spectrum of customary rates charged by attorneys in this District, the fact that the majority of the work performed was at a flat rate, equating to $212.12 hour mitigates any potentially excessive rates.  Specifically, because the average hourly rate for the services provided is less than $300 per hour, the Court concludes that the charges are reasonable.  Moreover, having reviewed the Billing Records, the Court is satisfied that the worked performed is commensurate with the effort needed to litigate this case to its current point.  Accordingly, the Court respectfully recommends awarding CIT $5,724.50 in attorneys' fees expended as of the filing of this motion.

The Court, however, concludes that an award for *anticipated* attorneys' fees is unwarranted.  Courts in this District "typically do not award fees before they are incurred."  *CIT Bank, N.A. v. Ayers*, No. 15-cv-7256, 2017 WL 6816486, at *5 (E.D.N.Y. Dec. 5, 2017), *report and recommendation adopted*, 2018 WL 317840 (E.D.N.Y. Jan. 3, 2018) (citing *E. Sav. Bank, FSB v. Rabito*, No. 11-cv-2501, 2013 WL 5423786, at *6 n.3 (E.D.N.Y Sept. 26, 2013) (noting that the plaintiff was "not entitled to anticipated fees")).  Here, Plaintiff's request for anticipated fees is based upon the estimated time required rendering services after the deposition of this motion in connection with finalizing the sale of the Subject Property. *See* Briskin Aff. ¶ 42. Given that the estimate is purely speculative, the Court recommends that CIT's request for $2,200 in anticipated legal fees be denied without prejudice and with leave

18

to renew upon the submission of the appropriate supporting documentation after such fees are incurred.

The Court further recommends that Plaintiff be awarded $1,645 for costs incurred in connection with this matter. Both the Note and the Mortgage entitle CIT to recover litigation disbursements. *See* Note § 6(E); Mortgage § 22. And courts in this District have found that "[r]easonable and identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable." *OneWest Bank, NA v. Raghunath*, No. 14-cv-3310, 2015 WL 5772272, at *7 (E.D.N.Y. Sept. 8, 2015), *report and recommendation adopted*, 2015 WL 5774784 (E.D.N.Y. Sept. 29, 2015). Here, CIT's submissions detail the following costs and disbursements: (i) $345 for the Notice of Pendency filing fee; (ii) $50 for the Notice of Pendency service Fee; (iii) $400 to file the instant action; and (iv) $850 for service of process. *See* Briskin Aff. ¶ 49; Billing Records at 15-16. Because each of these expenses was necessary to enforce Plaintiff's rights under the Note and Mortgage, the Court respectfully recommends awarding $1,645 in costs.

vii.   <u>Judgment of Foreclosure and Sale and Appointment of Referee</u>

In addition to monetary damages, Plaintiff seeks a judgment of foreclosure and sale of the Subject Property and the appointment of a referee to conduct the sale. *See* Briskin Aff. ¶¶ 52-58; Proposed Judgment. A plaintiff is entitled to foreclose upon and sell a property if it demonstrates "the existence of an obligation secured by a mortgage, and a default on that obligation." *1st Bridge LLC v. 682 Jamaica Ave., LLC*, No. 08-cv-3401, 2010 WL 4608326, at *3 (E.D.N.Y. July 13, 2010) (collecting

19

cases), *report and recommendation adopted*, 2010 WL 4607409 (E.D.N.Y. Nov. 4, 2010).  Further, courts routinely appoint referees to effectuate the sale of foreclosed properties.  *See, e.g., PMB Tech. Servs., LLC v. Mazoureix*, No. 14-cv-4834, 2015 WL 5664823, at *1 (E.D.N.Y. Sept. 23, 2015) (awarding a judgment of foreclosure and sale under the supervision of a referee); *E. Sav. Bank, FSB v. Evancie*, No. 13-cv-878, 2014 WL 1515643, at *4 (E.D.N.Y. Apr. 18, 2014).

As detailed above, CIT has established its right to foreclose upon the Subject Property due to the Coombeses' default on the Mortgage and Note.  Thus, the Court recommends that a judgment of foreclosure be entered.  Additionally, the Court recommends that Plaintiff be permitted to endorse three candidates as possible referees for the sale of the Subject Property from which Judge Spatt will select one, and that the proceeds of the sale be applied to the total amount owed on the Note as set forth above.[6]  *See Nationstar Mortg. LLC v. Fernandez*, No. 17-cv-404, 2017 WL 6767239, at *8 (E.D.N.Y. Nov. 21, 2017) (recommending appointment of a referee to conduct a foreclosure and sale with the proceeds being applied to the outstanding amount owed on the note), *report and recommendation adopted*, 2018 WL 262837 (E.D.N.Y. Jan. 2, 2018), *vacated in part*, 2018 WL 3424452 (E.D.N.Y. Mar. 20, 2018).

## IV.    Conclusion

For the reasons set forth above, the Court respectfully recommends that Plaintiff's motion for default judgment against the Coombeses be granted in part and

---

[6] The Court declines to recommend that a Special Master or Magistrate Judge be designated as the referee.

denied in part, and that CIT be awarded: (i) $505,577.31 in unpaid principal; (ii) $20,680.30 in accrued interest, plus additional *per diem* interest of $43.29 from October 15, 2018 until the date on which judgment is entered and post-judgment interest thereafter; (iii) $4,235 in recoverable costs; (iv) $20,705.82 is escrow advances; (v) $362.74. in late fees; (vi) $5,724.50 in attorneys' fees; and (vii) $1,645 in litigation costs, for total damages of $558,930.67 plus continuing interest. The Court further recommends that Plaintiff propose three candidates to Judge Spatt so that he may select one to act as referee, and that the Subject Property be foreclosed and sold with the proceeds to be applied to the amount due under the Note. Finally, the Court recommends that a default judgment against Velocity is appropriate such that its interest, if any, in the Subject Property should be extinguished. In accordance therewith, the Court suggests that an Order similar to the Proposed Judgment, but consistent with this Report and Recommendation, be entered.

## V.   Objections

A copy of this Report and Recommendation is being served on CIT by electronic filing on the date below. Plaintiff is directed to serve a copy of this Report and Recommendation on Defendants and promptly file proof of service by ECF. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a); *Ferrer v. Woliver*, 05-cv-3696, 2008 WL 4951035, at

*2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


Dated:     Central Islip, New York
           May 23, 2019          /s/ Steven I. Locke
                                       STEVEN I. LOCKE
                                       United States Magistrate Judge